864 P.2d 144

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Donald Brent BINGHAM,
Defendant–Appellant.**

**No. 19051.**

Supreme Court of Idaho,
Boise, January 1993 Term.

Nov. 22, 1993.

Westberg, McCabe & Collins, Boise, for defendant-appellant, Thomas J. McCabe, argued.

Hon. Larry EchoHawk, Atty. Gen., and Michael A. Henderson, Deputy Atty. Gen., Boise, for plaintiff-respondent, Michael A. Henderson, argued.

BISTLINE, Justice.

This is an appeal from a conviction and sentence for lewd conduct with a minor under sixteen years of age pursuant to I.C. § 18–1508.

C.L., the victim, told her friend and her friend's parents about repeated acts of sexual touching and intercourse by Bingham occurring over a period of several years. The parents took C.L. to the police on December 23, 1989, where she was interviewed by a police officer and then referred to the CARES ("Children At Risk Evaluation Services") unit at St. Luke's Hospital. There she was interviewed on January 12, 1990, by psychiatric nurse Patricia Baptista and by various physicians.

Bingham was indicted for lewd conduct. Some years earlier, he had been convicted of assault with intent to commit rape, a felony. He filed a motion in limine seeking to exclude all testimony that in any way related to Bingham's prior felony and/or the time he served in prison for it. The trial court granted the motion in part but denied it in regard to anticipated testimony by C.L. that Bingham had instructed her that if she were to tell anyone about his conduct, she should tell him first because he did not want to go back to prison.

At trial, the court permitted the State to introduce the videotape of the CARES interview over Bingham's objection. The jury was allowed to take this videotape into jury room deliberations. Bingham was convicted and sentenced.

Bingham contends that: 1) the district court should not have admitted the CARES videotape; 2) the jury should have been instructed on the effect of circumstantial evidence pursuant to *State v. Holder*[1]; and 3) C.L.'s testimony alluding to Bingham having previously been in prison should not have been allowed.

## ANALYSIS

### I. Admissibility of CARES videotape

■ At trial, the prosecutor notified the trial court and the defense that, in response to defense counsel's cross-examination of C.L., the State intended to recall Baptista and to introduce the CARES videotape into evidence. He contended that the videotape would be admissible under I.R.E. 801(d)(1)(B) and that defense counsel had alleged recent fabrication or improper influence or motive during cross-examination. Defense counsel objected to the videotape as 1) hearsay, arguing that he had

not alleged a *recent* fabrication and 2) highly prejudicial. The trial court, while finding that the cross-examination amounted to a charge of recent fabrication, also alluded to the doctrine of completeness, embodied by I.R.E. 106.[2]

On appeal, Bingham has challenged the admission of the CARES videotape as inadmissible hearsay not falling within the hearsay exclusion for prior consistent statements, I.R.E. 801(d)(1)(B). The State, while rebutting that argument, contends that the trial court based its admission of the videotape primarily on I.R.E. 106. For the reasons expressed below, we hold that the CARES videotape was not admissible under either rule.

We agree with the State that it is more appropriate to analyze the admissibility of the CARES videotape under I.R.E. 106 because the essence of the prosecutor's reason for seeking admission of the tape was to demonstrate, by providing context, that the allegedly inconsistent statements introduced on cross-examination of C.L. were actually *not* inconsistent, rather than introducing prior consistent statements to mitigate inconsistent statements. *See, e.g.,* Michael H. Graham, Federal Practice and Procedure: Evidence, § 6712, (Interim Edition) ("A prior statement that corroborates the witness may be admitted without reference to Rule 801(d)(1)(B), if it serves to explain or modify a fragment thereof introduced by the opposite party ... if it is otherwise related to or supportive of a denial or explanation offered in response to impeachment of a witness by an alleged self-contradiction.") Nonetheless, the entire videotape should not have been admitted under I.R.E. 106. Assuming the videotape would otherwise satisfy I.R.E. 106,[3] our decision

---

1. *State v. Holder,* 100 Idaho 129, 594 P.2d 639 (1979).

2. I.R.E. 106 provides: "Remainder of or related writings or recorded statements.—When a writing or recorded statement or part thereof is introduced by a party, an adverse party may require that party at that time to introduce any other part or any other writing or recorded statement which ought in fairness to be considered contemporaneously with it."

3. One potential problem with the videotape is that the defense cross-examined C.L. with a transcript of the videotape, not the videotape itself. Thus, it would not be appropriate to introduce excerpts of the videotape itself (rather than transcript excerpts) unless fairness required its admission. It would certainly be inappropriate to allow the videotape to then be brought in the jury room, thereby giving the rebuttal evidence more prominence than the initial questioning.

in *State v. Fain*, 116 Idaho 82, 774 P.2d 252 (1989), *cert. denied*, 493 U.S. 917, 110 S.Ct. 277, 107 L.Ed.2d 258 (1989), precluded the wholesale admission of the videotape. In *Fain*, the defendant sought admission of the entire transcript of a police interview after an officer testified as to various statements the defendant made during that interview. 116 Idaho at 86, 774 P.2d at 256. The trial court refused to admit the transcript. This Court noted that "[t]he State did not introduce the transcript, but [the officer] simply related his recollection of part of the conversation." *Fain*, 116 Idaho at 86, 774 P.2d at 256. We further observed that "Fain requested that the entire transcript be admitted into evidence; he did not limit his request to those portions of the transcript which explained, qualified or were relevant to that part of the conversation regarding which [the officer] testified." *Fain*, 116 Idaho at 86, 774 P.2d at 256. We held that while limited relevant portions would have been admissible under I.R.E. 106, Fain's counsel failed to tailor his request "so as to move for the admission of only those other parts of his statement which might be relevant in the context of [the officer's] testimony." *Fain*, 116 Idaho at 86, 774 P.2d at 256. In the instant case, the State's failure to tailor the request resulted in the admission of patently prejudicial and irrelevant evidence which accompanied the jury even into deliberations. Thus, the videotape's admission cannot be justified under I.R.E. 106.

■ As for the I.R.E. 801(d)(1)(B) admissibility issue, assuming (without deciding) that excerpts of the videotape would otherwise be admissible, the entire videotape was inadmissible for reasons similar to its inadmissibility under I.R.E. 106. Much of the videotape contained highly prejudicial, detailed statements about Bingham's conduct that had little or no relevance to the issues raised on cross-examination (i.e.,

credibility or consistency). Thus, under I.R.E. 403, admissibility of the entire videotape was error.

Bingham has shown that the admission of the videotape amounted to error, thus requiring reversal of the judgment against Bingham and remand for a new trial. We address other issues raised by Bingham to provide guidance to the trial court on remand.

## II. Necessity of a *Holder* instruction

■ The trial court refused to submit Bingham's proposed jury instruction on circumstantial evidence [4] (commonly referred to as a *Holder* instruction, deriving its caption from *State v. Holder*, 100 Idaho 129, 594 P.2d 639 (1979)) because the court concluded that the case was based on direct evidence, i.e., C.L.'s testimony.

Since the time Bingham submitted his appellate brief, this Court has twice held that a trial court need not give a *Holder* instruction unless the case against the defendant relies *wholly* on circumstantial evidence. *See State v. Phillips*, 123 Idaho 178, 182, 845 P.2d 1211, 1215 (1993); *State v. Jones*, 93.18 ISCR 1006 (Sept. 13, 1993). Bingham nonetheless invites this Court to require that trial courts give a *Holder* instruction to the jury in cases where there is *substantial* circumstantial evidence against the defendant, arguing that such an instruction further clarifies reasonable doubt and forces the jury to deliberate carefully when choosing between inferences. We are not convinced that we should depart from recent precedent [5] and thus reject Bingham's invitation.

## III. Admissibility of C.L.'s statement

■ Bingham challenges the trial court's partial denial of his motion in limine to exclude C.L.'s testimony that Bingham had

4. The proposed instruction read:
   Where the case of the State rests substantially or entirely on circumstantial evidence, you are not permitted to find the Defendant guilty of the crime charged against him unless the proved circumstances are not only consistent with the theory that the Defendant is guilty of the crime, but cannot be reconciled with any

other rational conclusion and each fact which is essential to complete a set of circumstances necessary to establish the Defendant's guilt has been proved beyond a reasonable doubt.

5. *But see State v. Jones*, 93.18 ISCR 1006 (Sept. 13, 1993) (Bistline, J., dissenting).

told her before the first act of intercourse, "If you ever decide to tell somebody, tell me first because I don't want to go back to prison." Tr., Vol. 5, at 2. The trial court ruled that the challenged testimony was relevant to explain why C.L. failed to report Bingham's conduct immediately and further that the probative value of the testimony outweighed its prejudicial nature.

The trial court analyzed the question correctly in large part. The evidence showing that a defendant has been in prison is virtually equivalent to evidence of a prior conviction. Thus, the admissibility of such evidence should be determined first by resort to I.R.E. 404(b)[6] ("Other crimes, wrongs or acts"), then, if the evidence clears that hurdle, by resort to I.R.E. 403.[7] I.R.E. 404(b) provides that "[e]vidence of other crimes ... is not admissible to prove the character of a person in order to show that the person acted in conformity therewith. It may, however, be admissible for other purposes...." By determining that the testimony was relevant to delay in reporting, a purpose other than the criminal propensity of the defendant, the trial court implicitly ruled the evidence admissible under I.R.E. 404(b).

On appeal, Bingham does not challenge the admission of the testimony under I.R.E. 404(b). Instead, he attacks the testimony as violating I.R.E. 403 and as contrary to our decision in *State v. Hedger*, 115 Idaho 598, 768 P.2d 1331 (1989).

We first note that this Court has already suggested that similar testimony should not be admitted. In *State v. Hedger*, 115 Idaho 598, 768 P.2d 1331 (1989), the victim testified that she knew the doors and windows of her residence were locked because "I made double sure since the time Marvin [the defendant] had gotten out of jail." 115 Idaho at 601, 768 P.2d at 1334. This Court, although holding that it was not error for the trial court to deny Hedger's motion for mistrial, called the testimony "improper."[8] *Hedger*, 115 Idaho at 601, 768 P.2d at 1334. An extensive analysis of the statement at that time was not made.

As for I.R.E. 403, we conclude that the trial court erred in its analysis. As discussed above, under I.R.E. 403 evidence should be excluded where its probative value is substantially outweighed by the danger of unfair prejudice. The trial court found the testimony more probative than prejudicial by focusing in on the probative nature of the entire statement. The reference to prison could have been be severed from the statement and replaced by something less inflammatory, for instance, C.L. could have been limited to testimony that Bingham told her to tell him first before she told anyone else about his conduct because he did not want to get into trouble. Then the more appropriate analysis should revolve on the probity and prejudice of that part of the statement alluding to the fact that Bingham had been in prison.

Rules of Evidence such as 404 and 609 recognize implicitly that previous bad acts, particularly previous convictions, are prejudicial. Even though C.L.'s statement does not reveal the facts behind Bingham's con-

**6.** Unless, of course, the prosecution is seeking to use the prior conviction to impeach the defendant, in which case Idaho Rule of Evidence 609 ("Impeachment by evidence of conviction of crime") would govern.

**7.** The State cited *Commonwealth v. Claypool*, 508 Pa. 198, 495 A.2d 176 (1985), and its progeny in its brief in an attempt to justify the admission of the testimony on alternate grounds. However, in our view *Claypool* merely sets forth another I.R.E. 404(b) exception, although the *Claypool* court admittedly did not specifically use such an analysis. *Cf. State v. Winkler*, 112 Idaho 917, 736 P.2d 1371 (Ct.App.1987). *Claypool* deals only with those situations in which a defendant has used his or her past criminal

conduct to accomplish an *element* of a crime (e.g., threat of violence). In such a case, the past conduct becomes relevant to a purpose other than to prove the criminal propensity of the defendant.

Even if, arguendo, the instant facts conformed to *Claypool*, as discussed above the inquiry does not stop at I.R.E. 404(b) but continues into I.R.E. 403.

**8.** The Court was slightly ambiguous on this point, however, as it later noted "[t]he references, even if error, were harmless" under the facts of the case. *Hedger*, 115 Idaho at 601, 768 P.2d at 1334. Nonetheless, it is noteworthy that the trial court in *Hedger* struck the testimony upon objection. *Id.*

viction, the mere fact that he had served time in prison (and thus was a convicted felon) is unduly prejudicial. On the other hand, the fact that Bingham referred to time in prison is not central to Bingham's statement and thus has minimal relevance:[9] had C.L. reported Bingham's alleged conduct, Bingham would have faced the possibility of a prison sentence regardless of his previous record.

In further proceedings, if this testimony is again challenged, the trial court should focus on the reference to Bingham's stay in prison and should consider the possibility of sanitizing the statement in order to avoid undue prejudice while maintaining the relevance of the entire statement.

## CONCLUSION

In light of the error resulting from improper admission of the CARES videotape, we reverse the conviction and remand for a new trial for proceedings consistent with the above opinion.

McDEVITT, C.J., JOHNSON and TROUT, JJ., concur.

REINHARDT, J. Pro Tem., dissenting.

In this case a child complained that her stepfather repeatedly abused her sexually over a number of years. She was taken to the police and was eventually interviewed by a psychiatric nurse, Patricia Baptista, along with various physicians at the CARES Unit at St. Luke's Hospital. A videotape of the interview and a transcript of the same were provided to defense counsel. At the trial defense counsel vigorously cross examined the child by using portions of the transcript in an effort to make it appear that the child was not being honest. As typically occurs, defense counsel took various parts of the statement out of context and challenged the child on said segments in an effort to make it appear that her testimony at trial was inconsistent with the statement on the videotape. This is a very common trial practice, and as a general rule, the more statements made by

a victim prior to trial, the better it is for defense counsel in that they can extract bits and pieces from the various statements and make them look inconsistent, no matter how consistent they may be when read all together as a whole. This unfortunate practice of manufacturing doubt where none truly exists becomes more acute of course when experienced and skilled defense counsel matches wits with a young child who is sitting in a crowded courtroom full of adults while facing her stepfather who she claims sexually abused her and who told her "If you ever decide to tell somebody, tell me first because I don't want to go back to prison." (the defendant had previously spent time in prison for rape).

In an effort to remedy the unfairness of the practice described above, and in an effort to let the jury ascertain for themselves whether or not a witness has made inconsistent statements, we have adopted I.R.E. 106 which provides as follows:

> Rule 106. Remainder of or related writings on recorded statements—When a writing or recorded statement or part thereof is introduced by a party, an adverse party may require him at that time to introduce any other part or any other writing a recorded statement which ought in fairness to be considered contemporaneously with it.

The trial judge in this case had the opportunity to watch the lengthy cross-examination of the child concerning the interview transcript and apparently felt that in fairness (which is the guiding light of Rule 106) the jury ought to see the interview in question and then decide for themselves whether or not the child was lying. The trial judge let the jury watch the child testify live and then she let the jury watch the videotape interview of the child. By so doing the trial judge took all the gamesmanship out of the cross-examination of the child and cleared the courtroom of the smoke. The trial judge seized upon the

---

**9.** In fact, at trial Bingham never raised the issue of C.L.'s failure to immediately report Bing- ham's conduct. Thus, the relevance of the entire statement is greatly diminished.

perfect opportunity to let some truth sneak into the trial.

The majority takes the position that our decision in *State v. Fain*, 116 Id. 82, 774 P.2d 252 precludes the "wholesale" admission of the videotape.[10]  *Fain* is totally different from the case we are dealing with today.  In *Fain* a police officer related a statement that the Defendant made to him. The Defendant then attempted to have the entire interview transcript (58 pages in length) introduced under Rule 106.  Much of the material contained in the 58 page transcript had no relevance whatsoever to the statement made by the officer.  The trial judge in *Fain* considered what the officer testified to and then considered the material in the 58 page transcript and then determined that *in fairness* the jury should not be provided the irrelevant material. We determined that under those facts the trial judge committed no error.  *Fain* is distinguishable in that a review of the videotape in the case at hand reveals that the entire tape is relevant to demonstrate that the witness did not make a statement at her interview which was inconsistent with her trial testimony.  Another distinction of course is that in *Fain* we accorded the trial judge some discretion with reference to the admission of the evidence in question.  The majority is not willing to do so in this case.

If we are to assume for the sake of discussion that portions of the statement were irrelevant, it is my understanding of the law that such irrelevant portions should be examined to determine whether or not their admission resulted in harm to the defendant.  I have compared the trial testimony to those portions of the interview that might be argued to be irrelevant and having made such a comparison, I can only conclude that if the trial judge did err, that said error was harmless in nature.

To summarize I believe the trial court properly exercised its discretion in admitting the videotape into evidence under the provisions of I.C.R. 106.  If it can be said that the court erred in failing to delete

certain irrelevant portions from the videotape, said error was harmless in nature. For these reasons I respectfully dissent.

---

10.  It should be noted that the trial judge did not admit the tape "wholesale."  In the tape there was a reference to the Defendant having taken a polygraph.  Upon objection this was deleted from the tape.