# IN THE COURT OF APPEALS OF THE STATE OF IDAHO

## Docket No. 47735

| | |
|---|---|
| STATE OF IDAHO, | ) |
| | ) **Filed: May 18, 2022** |
| Plaintiff-Respondent, | ) |
| | ) **Melanie Gagnepain, Clerk** |
| v. | ) |
| | ) **THIS IS AN UNPUBLISHED** |
| DARIN MARSHALL OGDEN, | ) **OPINION AND SHALL NOT** |
| | ) **BE CITED AS AUTHORITY** |
| Defendant-Appellant. | ) |
| | ) |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Steven J. Hippler, District Judge.

Judgment of conviction and sentence for possession of a controlled substance and possession of drug paraphernalia, affirmed.

Eric D. Fredericksen, State Appellate Public Defender; Brian R. Dickson, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Kacey L. Jones, Deputy Attorney General, Boise, for respondent.

---

BRAILSFORD, Judge

Darin Marshall Ogden appeals from his judgment of conviction following a jury trial for felony possession of a controlled substance, Idaho Code § 37-2732(c), and misdemeanor possession of drug paraphernalia, I.C. § 37-2734A. Ogden contends the district court made erroneous evidentiary rulings and erred by failing to strike certain documents attached to the presentence investigation report (PSI) and to redline purported inaccurate portions of the PSI. We affirm.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

While responding to an unrelated welfare check in a store's parking lot, Officer Wirshing observed Ogden spray-painting a vehicle and then watched him go into the store. Officer Wirshing

1

activated his body camera, encountered Ogden when he returned to the vehicle, and began to converse with him about the vehicle. During this conversation, Officer Wirshing observed an object protruding from Ogden's pocket and asked him if the object was a methamphetamine pipe. Ogden admitted it was and claimed he found it on the ground. Officer Wirshing radioed for assistance and placed Ogden in handcuffs.

Officer Sontag responded to Officer Wirshing's request for assistance, and a drug dog alerted on Ogden's vehicle. Officers searched the vehicle and discovered an uncapped hypodermic needle, a .45 caliber handgun with six rounds in the magazine, tactical gear, and a combination lockbox. When Officer Wirshing questioned Ogden about the items found in the vehicle, he admitted owning the handgun and the tactical gear. After Ogden explained where he bought the tactical gear, Officer Wirshing stated, "I'm just tellin' ya that makes me nervous." Ogden responded, "I'm sorry," and Officer Wirshing replied, "No, it's alright. It's not illegal. I'm just telling you, most folks don't have that stuff."

Ogden stated he found the lockbox in the vehicle's trunk after he purchased the vehicle and denied knowing the lockbox's combination. Officer Sontag forced the lockbox open and stated it contained "money, ammo, needles, and meth." A few minutes later, and after Ogden denied owning the lockbox, Officer Wirshing asked Officer Sontag if he found anything else in the lockbox. Officer Sontag responded he also found bus tickets for "an Ogden" in the lockbox. At that point, Ogden denied the bus tickets were located in the lockbox.

Following this encounter, the State charged Ogden with felony possession of a controlled substance and misdemeanor possession of drug paraphernalia, and the case proceeded to a jury trial. Before trial began, the State proposed admitting a redacted version of the video from Officer Wirshing's body camera showing portions of the officers' encounter with Ogden.[1] On the first day of trial, Ogden informed the district court that the parties disagreed about the information the State both redacted from and included in the State's proffered video. As relevant to this appeal, Ogden objected to the contents of the State's proffered video because it excluded the officers' and Ogden's exchange about the bus tickets being in the lockbox and because it included Officer Wirshing's statement about the tactical gear making him nervous.

---

[1] The district court noted that "the State was woefully late producing the video"; it gave Ogden "the opportunity to exclude the video" and "to have a continuance"; but he declined.

2

The district court noted it had not yet reviewed the State's proffered video and would take the matter up "at a break." Following the parties' opening statements, the court addressed Ogden's objections to the State's proffered video. At that time, the court ruled that Officer Wirshing's statement about the tactical gear making him nervous was not relevant. Additionally, Ogden and the State agreed the State would include Officer Sontag's statement about locating the bus tickets but not Ogden's subsequent statement denying the bus tickets were in the lockbox. Regarding this agreement, Ogden's counsel stated, "It's not [Ogden's] statement we want in[;] it's the officer's statement." Ogden's counsel then stated that, if Ogden wanted his response to Officer Sontag's statement in the record, Ogden would testify and "show that video." The court, however, responded, "You can't show the video [because] it's still hearsay."

Subsequently, before the State presented Officer Wirshing's testimony, Ogden objected to the State's revised video because it still contained Officer Wirshing's statement about the tactical gear making him nervous. At that point, the district court changed its ruling about the statement. The court noted it was weighing the statement under Idaho Rule of Evidence 403; the statement's "relevance was relatively minimal"; the statement was "not harmful" and did not cause any prejudice; and the court was concerned about "the waste of time" necessary to pause the trial to redact the statement. After this ruling, the State admitted its redacted version of Officer Wirshing's video from his body camera as State's Exhibit 1, which contained Officer Wirshing's statement about the tactical gear making him nervous and excluded Ogden's denial about the bus tickets being in the lockbox.

Later, before Ogden's cross-examination of Officer Wirshing, Ogden proposed admitting a "nine-second clip" of the video from Officer Wirshing's body camera about Officer Sontag's purported discovery of the bus tickets in the lockbox. Ogden explained this clip was necessary to impeach Officer Sontag, who had testified the prior day that he could not remember telling Ogden and Officer Wirshing "about the bus tickets." After reviewing the clip, the district court ruled the clip was admissible, explaining that "fairness" required playing Ogden's "immediate response to those alleged findings," apparently referring to Officer Sontag's statement that he found bus tickets in the lockbox. Further, the court stated Ogden's "immediate responses" to Officer Sontag's statement about the location of the bus tickets "were excited utterances."

During Ogden's cross-examination of Officer Wirshing, however, the district court sua sponte called a sidebar and changed its ruling. The court explained--while referring to the court's

3

initial ruling before opening statements--that it was Ogden who wanted Officer Sontag's statement about locating the bus tickets in the lockbox admitted into evidence and that Ogden could not "use completeness to get [his] statement in" and could not "bootstrap [his] hearsay statement in" through the admission of Officer Sontag's statement.

Ultimately, the jury found Ogden guilty of both charges. At sentencing, Ogden's counsel objected to the PSI on three grounds, including that: (1) the PSI attached investigative records from two pending unrelated cases; (2) the PSI attached third-party records from the two pending unrelated cases; and (3) the PSI contained seven purportedly inaccurate statements on various issues. Addressing these challenges, the district court denied Ogden's request to strike the purported inaccurate statements, concluded the investigative records from the other pending cases were reliable, and granted Ogden's request to strike the third-party records from the PSI.

Ogden timely appeals his conviction and sentence.

## II.

## STANDARD OF REVIEW

The question of whether evidence is relevant is reviewed de novo, while the decision to admit relevant evidence is reviewed for an abuse of discretion.[2] *State v. Shutz*, 143 Idaho 200, 202, 141 P.3d 1069, 1071 (2006); *State v. Lamphere*, 130 Idaho 630, 632, 945 P.2d 1, 3 (1997). The decision whether to strike information from a PSI is also reviewed for an abuse of discretion. *See State v. Molen*, 148 Idaho 950, 961, 231 P.3d 1047, 1058 (Ct. App. 2010). When a trial court's discretionary decision is reviewed on appeal, the appellate court conducts a multi-tiered inquiry to determine whether the trial court: (1) correctly perceived the issue as one of discretion; (2) acted

---

[2] Ogden asks this Court to adopt a new standard of review for a trial court's evidentiary rulings. Ogden acknowledges that generally whether evidence is admissible is reviewed for an abuse of discretion. He argues, however, that this standard is unduly broad and that this Court should freely review evidentiary rulings involving questions of law or for compliance with the Idaho Rules of Evidence. In support, Ogden relies on *State v. Garcia*, 166 Idaho 661, 462 P.3d 1125 (2020). We do not read *Garcia* so broadly. In that case, the Court stated, "The question of whether evidence is relevant is reviewed de novo, while the decision to admit relevant evidence is reviewed for an abuse of discretion." *Id.* at 669, 462 P.3d at 1133. The Court concluded that the evidence at issue was not relevant; the district court erred by admitting the evidence; but the error was harmless. *Id.* Thus, the Court did not freely review the district court's decision to admit the evidence. Instead, the Court reviewed the trial court's ruling to admit irrelevant evidence using an abuse of discretion standard. Accordingly, to characterize *Garcia* as an example of the Court freely reviewing whether the trial court erroneously admitted evidence is overbroad.

within the boundaries of such discretion; (3) acted consistently with any legal standards applicable to the specific choices before it; and (4) reached its decision by an exercise of reason. *State v. Herrera*, 164 Idaho 261, 270, 429 P.3d 149, 158 (2018).

## III.

## ANALYSIS

### A. Admissibility of Ogden's Denial About the Bus Tickets

On appeal, Ogden challenges the district court's ruling that his statement denying the bus tickets were located in the lockbox in response to Officer Sontag's statement claiming he found them in the lockbox was inadmissible. Specifically, Ogden cites in his opening brief to the court's exclusion of his proffered video clip during his cross-examination of Officer Wirshing in support of Ogden's argument and contends this ruling is erroneous.

As an initial matter, we note that Ogden's proffered video clip is not in the record.[3] Meanwhile, the transcribed discussion in the record about the video clip's contents does not provide clarity. For example, after reviewing the video clip, the court stated, "that's the exact same video you played yesterday up to the part where the officer said it was in the box and then the rest of it was cutoff." Ogden's counsel stated that "the State and I are in disagreement as to whether or not the video I want to show is the same." The prosecutor stated Ogden's proffered video clip "also adds--at the very beginning you hear basically Officer Wirshing repeating [Ogden's] self-serving denials." Meanwhile, the court's ruling excluding the video clip focused on Ogden's statements in response to Officer Sontag's statement that he found the bus tickets in the lockbox, not on Officer Wirshing's restatement of Ogden's denials.

Ogden had the responsibility to provide a sufficient record to substantiate his claims on appeal. *See State v. Murinko*, 108 Idaho 872, 873, 702 P.2d 910, 911 (Ct. App. 1985) (requiring appellant to provide sufficient record for review). In the absence of an adequate record on appeal to support the appellant's claims, we will not presume error. *State v. Beason*, 119 Idaho 103, 105, 803 P.2d 1009, 1011 (Ct. App. 1991). Ogden's failure to include his proffered video clip in the

---

[3] On appeal, Ogden moved to augment the record with proposed exhibits published to the district court but not in the appellate record. In that motion, he concedes those exhibits are necessary to address the issues on appeal. The Supreme Court denied the motion because the exhibits were not contained in the trial record.

record or otherwise to provide an adequate description of that proffer on the record is fatal to his challenge.

Regardless, we conclude Ogden failed to establish the district court's ruling excluding his proffered video clip was erroneous. In support of his challenge, Ogden asserts the court erroneously excluded his statements in response to Officer Sontag's statement about finding the bus tickets in the lockbox because the court concluded Ogden's statements were "excited utterances." That conclusion, however, was not the court's ultimate evidentiary ruling. Rather, the court's final ruling excluding Ogden's statements does not mention the excited utterance exception to the hearsay rule. *See* I.R.E. 803(2) (excepting from rule against hearsay statement related to startling event or condition made while under stress of excitement). A trial court has the "discretion to change its own pretrial rulings, especially evidentiary rulings." *State v. Thorngren*, 149 Idaho 729, 736, 240 P.3d 575, 582 (2010) (citing with approval *Ritter v. State*, 532 S.E.2d 692, 695 (Ga. 2000) ("[A] court retains broad discretion over interlocutory evidentiary rulings which may be modified at any time until entry of final judgment.")). Accordingly, the district court was not bound to follow its initial rulings on the issue. Moreover, Ogden never argued to the district court that his hearsay statements were admissible as excited utterances. *See State v. Garcia-Rodriguez*, 162 Idaho 271, 275, 396 P.3d 700, 704 (2017) (noting appellate review is limited to evidence, theories, and arguments presented to trial court).

We construe the district court's ultimate ruling excluding Ogden's proffered video clip to rely on the rule of completeness as articulated in I.R.E. 106.[4] For example, the court stated, "I told [counsel] you weren't going to be able to use completeness to get [Ogden's] statement [into evidence]," referring to an earlier ruling that Ogden's statements were hearsay and to his prior reliance on "the completeness doctrine" to assert the State was required to include "additional video." Rule 106 can be an exception to the rule against hearsay and provides that:

> If a party introduces all or part of a writing or recorded statement, an adverse party may require the introduction, at that time, of any other part--or any other writing or recorded statement--that in fairness ought to be considered at the same time.

---

[4] Ogden argues that "the district court's analysis on this issue appears to be solely under I.R.E. 801(d)(2)--that the defendant cannot introduce his own statements as evidence because he is not a party *opponent*." We do not construe the court's ruling to rely on I.R.E. 801(d)(2).

6

I.R.E. 106; *see also State v. Bingham*, 124 Idaho 698, 699, 864 P.2d 144, 145 (1993) (noting hearsay may be admissible under I.R.E. 106). The common law rule of completeness underlying Rule 106 protects against the "danger that an out-of-context statement may create such prejudice that it is impossible to repair by a subsequent presentation of additional material." *Beech Aircraft Corp. v. Rainey*, 488 U.S. 153, 171 n.14 (1988). Accordingly, Rule 106 "requires the admission of those portions of the statement that are 'necessary to qualify, explain or place in context that portion already introduced.'" *State v. Prasertphong*, 114 P.3d 828, 831 (Ariz. 2005) (quoting *United States v. Branch*, 91 F.3d 699, 728 (5th Cir. 1996)); *see also Bingham*, 124 Idaho at 699-700, 864 P.2d at 145-46 (noting evidence may be admissible under I.R.E. 106 to provide context).

In this case, I.R.E. 106 does not provide for the admission of Ogden's denial that the bus tickets were not in the lockbox. That denial is not necessary to complete Officer Sontag's statement about finding the tickets in the lockbox by qualifying, explaining, or otherwise providing context for that statement. Rather, Ogden's denial only attempts to refute Officer Sontag's statement. Moreover, fairness does not require the admission of Ogden's denial because he repeatedly stated he was agreeable to redacting his denial if the district court would allow the admission of Officer Sontag's statement about finding the bus tickets in the lockbox. Ogden never argued to the district court that "fairness" required inclusion of his response to Officer Sontag's statement. To the contrary, Ogden's agreement to redact the denial is at least an implicit acknowledgement that doing so was proper or "fair."

B.    **Admissibility of Officer Wirshing's Statement About Ogden's Tactical Gear**

Ogden also challenges the district court's ruling allowing the admission of Officer Wirshing's statement about Ogden's tactical gear making him nervous after the court earlier ruled the statement was irrelevant. Ogden argues that the court improperly applied I.R.E. 403 by weighing irrelevant evidence against the danger of unfair prejudice and that Officer Wirshing's statement caused "a significant risk of undue prejudice."

To be admissible, evidence must be relevant. I.R.E. 402. "Irrelevant evidence is not admissible." *Id.* Evidence is relevant if "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." I.R.E. 401. The fact's relationship to the legal theories that the parties present determines whether the fact is of consequence. *State v. Garcia*, 166 Idaho 661, 670, 462 P.3d

7

1125, 1134 (2020). A trial court may exclude relevant evidence under I.R.E. 403 if its probative value is substantially outweighed by a danger of unfair prejudice.

Although the district court initially ruled Officer Wirshing's statement about Ogden's tactical gear making him nervous was irrelevant, the court subsequently revised its ruling to conclude this statement was "minimally" relevant. *See Garcia*, 166 Idaho at 671, 462 P.3d at 1135 (ruling "minimal" relevance satisfies requirement); *see also Thorngren*, 149 Idaho at 736, 240 P.3d at 582 (noting trial court has "discretion to change its own pretrial rulings, especially evidentiary rulings"). We disagree, however, that Officer Wirshing's statement about his reaction to Ogden's tactical gear had any relevance. Nothing in the record indicates the statement tends to make more or less probable any required element of proof or legal theory advanced by the parties.

Regardless, the error in admitting Officer Wirshing's statement was harmless. Error is not reversible unless it is prejudicial. *State v. Stell*, 162 Idaho 827, 830, 405 P.3d 612, 615 (Ct. App. 2017). Where a criminal defendant shows an error based on a contemporaneously objected-to, nonconstitutional violation, the State then has the burden of demonstrating to the appellate court beyond a reasonable doubt the error did not contribute to the jury's verdict. *State v. Montgomery*, 163 Idaho 40, 46, 408 P.3d 38, 44 (2017). Thus, we examine whether the alleged error complained of in the present case was harmless. *See id.* Harmless error is error unimportant in relation to everything else the jury considered on the issue in question, as revealed in the record. *Garcia*, 166 Idaho at 674, 462 P.3d at 1138. This standard "requires weighing the probative force of the record as a whole while excluding the erroneous evidence and at the same time comparing it against the probative force of the error." *Id.* If the error's effect is minimal compared to the probative force of the record establishing guilt beyond a reasonable doubt without the error, then the error did not contribute to the verdict rendered and is harmless. *Id.* The reviewing court must take into account what effect the error had, or reasonably may have had, on the jury in the context of the total setting and in relation to all else that happened, which necessarily includes the evidence presented. *Kotteakos v. United States*, 328 U.S. 750, 764 (1946).

In this case, the admission of Officer Wirshing's statement about the tactical gear making him nervous was harmless. The State presented substantial evidence that Ogden possessed drug paraphernalia and a controlled substance. For example, the evidence shows that Ogden admitted having a methamphetamine pipe in his pocket, owning the handgun and tactical gear in the vehicle, and owning the vehicle, which contained the lockbox where Officer Sontag discovered

8

methamphetamine and the bus tickets for "an Ogden." Additionally, Officer Wirshing acknowledged that, although the tactical gear made him nervous, Ogden's possession of that gear was lawful. The probative force of this record, both while excluding Officer Wirshing's statement about the tactical gear making him nervous and by comparing the statement's minimal effect to the record's probative force, establishes the error in admitting Officer Wirshing's statement did not contribute to the guilty verdict. Rather, the error was unimportant in relation to everything else the jury considered. Accordingly, the error was harmless.

Moreover, Ogden's argument that Officer Wirshing's statement caused a significant risk of undue prejudice is not persuasive. In support of this argument, Ogden contends that "when the jury is exposed to information [suggesting] the defendant may act in threatening or aggressive ways, they could convict based on a [perceived] character for violence rather than actual guilt of the charged conduct." In support, Ogden relies on *State v. Wright*, 153 Idaho 478, 487, 283 P.3d 795, 804 (Ct. App. 2012). In that case, this Court ruled that a trial court's decision to restrain a defendant during trial requires "close judicial scrutiny" and that the court should restrain the defendant "only in extreme and exceptional cases." *Id.* We disagree that the rules and analysis in *Wright* apply to the trial court's admission in this case of Officer Wirshing's statement about tactical gear making him nervous. The statement is categorically different than restraining a defendant with shackles in the jury's presence.

Finally, we disagree with Ogden's assertion that "it was not reasonable for the district court to insist on the expedience of the trial schedule to effectively allow [the State] to circumvent an evidentiary ruling." Generally, the trial court may take into consideration an unjustifiable delay in the trial when applying the rules of evidence. I.R.E. 102 (noting rules should be construed to eliminate unjustifiable delay). The district court's concern about delaying trial ameliorates its decision to admit irrelevant but harmless evidence.

## C.     Cumulative Error

Ogden also contends the cumulative error doctrine requires a reversal of his conviction. Under the doctrine of cumulative error, a series of errors, harmless in and of themselves, may in the aggregate show the absence of a fair trial. *State v. Adamcik*, 152 Idaho 445, 483, 272 P.3d 417, 455 (2012). A necessary predicate to the application of the doctrine, however, is a finding of more than one error. *Id.* Ogden has failed to demonstrate at least two errors, a necessary predicate to

the application of the cumulative error doctrine. Therefore, Ogden is not entitled to reversal under the cumulative error doctrine.

**D.      PSI Corrections**

Ogden also argues the district court erred by failing to strike certain documents attached to the PSI and to redline purported inaccuracies in the PSI. The rules of evidence are not applicable to a PSI. *State v. Rodriguez*, 132 Idaho 261, 263, 971 P.2d 327, 329 (Ct. App. 1998). The sentencing court, in its discretion, may consider information that would be inadmissible otherwise if the court believes that information is reliable and the defendant has an opportunity to present favorable evidence and to explain or rebut adverse information. *State v. Carey*, 152 Idaho 720, 721, 274 P.3d 21, 22 (Ct. App. 2012); *see also* I.C.R. 32(e)(1) (noting court may consider reliable, inadmissible information in PSI); *State v. Campbell*, 123 Idaho 922, 926, 854 P.2d 265, 269 (Ct. App. 1993) (ruling court may consider "evidence of charges which have not yet been proved, so long as the defendant has the opportunity to object to, or to rebut, the evidence of his alleged misconduct"). The court, however, must disregard hearsay if there is no reasonable basis to deem it reliable, such as when the information is simply conjecture. *Carey*, 152 Idaho at 721, 274 P.3d at 22; *see* I.C.R. 32(e)(1).

When considering a PSI, the sentencing court has two distinct obligations. *State v. Golden*, 167 Idaho 509, 511, 473 P.3d 377, 379 (Ct. App. 2020). First, the court must reject consideration of inaccurate, unfounded, or unreliable information in the PSI. *Id.*; *see also Carey*, 152 Idaho at 722, 274 P.3d at 23 (noting unfounded, unreliable, or inaccurate information must be rejected); *Molen*, 148 Idaho at 961, 231 P.3d at 1058 (noting court correctly declined to consider unreliable information). Second, the court must redline from the PSI the information it is excluding as incorrect or unreliable. *Golden*, 167 Idaho at 511, 473 P.3d at 379. Such redlining protects the defendant against the future misuse of the unreliable information and provides a clear record for appellate review. *Id.* at 512, 473 P.3d at 380.

The sentencing court is not required to strike or disregard information in the PSI simply because the defendant disputes the information. *Id.* at 511, 473 P.3d at 379; *see also Carey*, 152 Idaho at 722, 274 P.3d at 23 (holding no authority requires that "a sentencing court must strike from a PSI any statement that the defendant disputes"). The defendant, however, may present evidence to the court to challenge disputed information during the sentencing hearing. *See Carey*, 152 Idaho at 722, 274 P.3d at 23. For example, the defendant may offer his own rebuttal to the

disputed information or subpoena the sources of that information for cross-examination. *Id.*; *State v. Burdett*, 134 Idaho 271, 275-76, 1 P.3d 299, 303-04 (Ct. App. 2000). By offering such evidence, the defendant may give the court sufficient information to make an independent determination on the disputed information's reliability. *Rodriguez*, 132 Idaho at 264, 971 P.2d at 330.

Ultimately, the sentencing court has the power to determine the reliability of the disputed information and to disregard inaccurate, unreliable, or unfounded information. *Id.* The defendant must obtain a definitive ruling from the court determining the disputed information is unreliable. *State v. Hanchey*, 169 Idaho 635, 640, 500 P.3d 1159, 1164 (Ct. App. 2021). A court's duty to redline disputed information only arises if the court actually determines the information is inaccurate, unreliable, or unfounded. *State v. Granger*, ___ Idaho ___, ___, ___ P.3d ___, ___ (Ct. App. 2022). Additionally, the defendant has the burden to ensure the court has appropriately documented any ordered changes and to provide a sufficient record to substantiate his appellate claim. *Id.* at ___, ___ P.3d at ___. For purposes of appeal, pointing to the PSI created and filed *before* sentencing in support of a claim that the court failed to strike or correct inaccurate, unreliable, or unfounded information in the PSI *at* or *after* the sentencing hearing is not adequate. *Id.* at ___, ___ P.3d at ___.

In this case, Ogden has failed to provide a sufficient record to substantiate his appellate claim regarding his challenges to the PSI. The file stamp on the PSI in the appellate record is dated November 18, 2019.[5] Meanwhile, the sentencing hearing--at which Ogden contends the district court agreed to make his requested corrections to the PSI--occurred on December 9. Ogden did not include in the appellate record the PSI the district court subsequently distributed to the Department of Correction under I.C.R. 32(h). As Ogden concedes, "the district court's copy of the PSI" is not in the appellate record. Because Ogden failed to provide an adequate appellate record to substantiate his claim, we will not presume error.

Moreover, Ogden misconstrues the district court's rulings related to his proposed corrections. Ogden contends the court "affirmatively accepted" five of those proposals but then "refused to red-line the PSI." As the court repeatedly explained, however, the court declined to

---

[5] When settling the record, Ogden objected to the PSI because it contained "sexually exploitive material" in violation of I.C.R. 32(e)(1) and I.A.R. 31(b). The district court granted Ogden's objection, and as a result, six pages of the PSI in the appellate record are redacted. These redactions do not relate to Ogden's challenges on appeal.

change the information because it was "not in a position to strike [the information and] to decide" whether the information was or was not reported to the PSI investigator." Regardless, the court repeatedly indicated it would "personally" "take into consideration" Ogden's explanations of the information. Such statements, however, are not definitive rulings. The court did not definitively rule on Ogden's proposed corrections, and Ogden did not provide any evidence to demonstrate that the information he challenged was inaccurate, unfounded, or unreliable. *See Hanchey*, 169 Idaho at 640-41, 500 P.3d at 1164-65 (ruling court must redline inaccurate or unreliable information). Accordingly, we conclude Ogden failed to establish the district court abused its discretion.

Additionally, we conclude the district court did not abuse its discretion by declining to strike from the PSI the attached investigative records related to two separate, pending cases against Ogden. Ogden argues that this information "interjected too much speculation and conjecture, and too little support for why the hearsay information is reliable, to comply with I.C.R. 32(e)." In support Ogden relies on *State v. Mauro*, 121 Idaho 178, 824 P.2d 109 (1991). In *Mauro*, the PSI contained information from the United States Attorney's office about the defendant in an unrelated, federal case. *Id*. at 182, 824 P.2d at 113. The Idaho Supreme Court concluded the information's source did not make the information "per se reliable," and absent an explanation from the presentence investigator as to why the hearsay was reliable, the Court held the information resulted in too much speculation and conjecture. *Id.* at 183, 824 P.2d at 114.

This case is distinguishable from *Mauro*, however. Unlike *Mauro*, the district court in this case correctly noted it could "consider other charges, even if unproved" and expressly found the information in the unrelated cases was reliable because a grand jury had found probable cause to indict Ogden on the charges. The court's express finding of reliability was not erroneous, and the court did not abuse its discretion by declining to strike the investigative records.

Finally, Ogden notes that the PSI attached copies of the third-party records from the unrelated, pending cases; the district court expressly ruled "to strike those records from this case"; but the records remain attached to the PSI in the appellate record. Ogden asserts this Court should remand the case to ensure the third-party records were not contained in the PSI distributed under I.C.R. 32(h). The State agrees "a limited remand is necessary to ensure the [third-party] records are removed from the PSI." The defendant bears the burden of ensuring the sentencing court appropriately documented the ordered changes because it is the responsibility of the appellant to

12

provide a sufficient record to substantiate his or her claims on appeal. *Granger*, ___ Idaho at ___, ___ P.3d at ___. The State's agreement that a limited remand should occur does not relieve Ogden of the burden to establish error. *See State v. Stevens*, 93 Idaho 48, 54, 454 P.2d 945, 951 (1969). Because a copy of the PSI and associated attachments actually distributed to the Department of Correction is absent from the record on appeal, Ogden has failed to provide an adequate record.

## IV.

## CONCLUSION

We conclude the district court did not abuse its discretion by excluding evidence of Ogden's denial of the location of the bus tickets in the lockbox. Although Officer Wirshing's reaction to Ogden's tactical gear was irrelevant, admission of that evidence was harmless, and the cumulative error doctrine is inapplicable in this case because Ogden failed to show two errors. We also conclude Ogden failed to provide an adequate appellate record to review his challenges to the PSI's reliability and accuracy and its attachments; but regardless, the court did not abuse its discretion when ruling on those challenges. Accordingly, we affirm Ogden's judgment of conviction and sentence.

Chief Judge LORELLO and Judge GRATTON **CONCUR**.