IN THE SUPREME COURT OF THE STATE OF IDAHO
Docket No. 49958

STATE OF IDAHO,               )

                        )      **Boise, January 2023 Term**

    Plaintiff-Respondent,     )

                        )      **Opinion Filed: March 21, 2023**

v.                     )

                        )      **Melanie Gagnepain, Clerk**

DARIN MARSHALL OGDEN,    )

                        )

    Defendant-Appellant.     )

_____)

Appeal from the District Court of the Fourth Judicial District of the State of Idaho, Ada County. Steven J. Hippler, District Judge.

The district court's judgment is <u>affirmed in part, reversed in part, and remanded</u>.

Eric D. Fredericksen, State Appellate Public Defender, Boise, attorney for Appellant. Brian Dickson argued.

Raúl R. Labrador, Idaho Attorney General, Boise, attorney for Respondent. Kacey Jones argued.

_____

BEVAN, Chief Justice.

This case comes to the Court on a petition for review from the Idaho Court of Appeals. Darin Ogden appeals from his judgment of conviction for possession of methamphetamine and drug paraphernalia. During a consensual encounter, officers searched Ogden's vehicle outside of a business and arrested Ogden for felony possession. At trial, the State introduced redacted police officer on-body video showing the search. The nature and scope of the video became an issue during trial. The jury found Ogden guilty on both counts. At sentencing, Ogden objected to portions of a presentence investigation (PSI) report that included investigative and third-party records from two pending unrelated cases, and seven allegedly inaccurate statements in the PSI. Ogden's objections to the PSI were largely denied. Ogden appealed to the Court of Appeals, which affirmed, and he then petitioned for review to this Court, which was granted.

On appeal, Ogden argues two main trial errors. First, a response he gave to officers that was recorded on the video, but redacted, should have been admitted. Second, Ogden argues it was

1

error for the district court to permit irrelevant evidence to be presented to the jury. Given the accumulation of these alleged multiple errors, Ogden argues that his conviction must be vacated. Ogden also asserts error regarding the PSI. He argues that while the district court agreed to strike some documents, those records remained in the PSI. He also asserts that although the district court affirmatively accepted five of his corrections, it failed to redline the PSI accordingly. For the reasons discussed below, we affirm the district court's decision in part, reverse in part, and remand.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Factual Background

Officer Chris Wirshing with the Boise Police Department responded to a Fred Meyer store in Boise, Idaho. Dispatch had received a call from a Fred Meyer employee about a female standing in the summer sun for hours. When Wirshing arrived, he noticed a man, later identified as Darin Ogden, spray painting a Volkswagen Jetta in the south end of the parking lot away from the other cars. After Wirshing completed a welfare check on the female that the Fred Meyer employee had called about, he then asked the employee if he knew who was in the parking lot spray painting a vehicle. As Wirshing asked this question, Ogden walked by Wirshing and the employee and went inside Fred Meyer.

Wirshing walked to the car Ogden had been painting and looked around. While Wirshing was standing beside the car, Ogden walked out of Fred Meyer and approached Wirshing. Ogden and Wirshing had a brief conversation about the vehicle. Ogden said he was painting the vehicle to make it look nice for a date he had later in the day. During this discussion, Wirshing noticed a dark-colored glass device protruding from Ogden's right front pants pocket, which Wirshing identified as a pipe used to smoke methamphetamine.

Wirshing asked Ogden if the device inside his pocket was a pipe. Ogden confirmed it was and told Wirshing he had found the pipe. Ogden also told Wirshing he was an addict and hoped he would find something inside the pipe. While waiting for other officers to arrive, Wirshing continued to speak with Ogden. When those officers arrived, Wirshing placed Ogden in handcuffs and gave him the option to sit on the bumper of his car or to sit in the patrol car. Ogden asked and was allowed to sit on the curb.

Once Ogden was detained, Wirshing requested Ogden's consent to search the car's interior. Ogden refused. As another officer ran the vehicle identification number (VIN) on the car, Wirshing

2

ran his drug-detecting canine, Rosco, around the vehicle. Rosco alerted to the presence of narcotics. Officers Wirshing, Matt Janicek, and Joshua Sontag searched Ogden's vehicle.

The search revealed a Springfield Armory .45 caliber handgun between the driver's seat and center console. The firearm had six rounds in the loaded magazine, but no bullets in the chamber. Janicek discovered an uncapped hypodermic syringe in the car. Sontag located a black and silver lockbox in the backseat. Ogden told Sontag he did not know the combination to the lockbox and said the box came with the vehicle when he bought it. Sontag forced open the box and uncovered $221.00 in cash, a plastic sandwich bag containing a white crystalline substance later identified as methamphetamine, a box of a .45 caliber ammunition, hypodermic needle caps, and three bus tickets with the name Marshall Ogden. Ogden admitted buying the bus tickets, but denied that they were inside the box. The box of ammunition found inside the lockbox was missing six bullets and matched the six bullets found loaded in the .45 caliber handgun.[1] Officers also found 22.9 grams of methamphetamine.

Following the search, Wirshing read Ogden his *Miranda*[2] rights. Ogden then confirmed he owned the gun, but he denied owning the box. Ogden stated the box came from the same people from whom he bought the car. Ogden was arrested and charged with felony possession of a controlled substance and a misdemeanor for possession of drug paraphernalia.

**B. Procedural Background**

Ogden's jury trial was scheduled for March 26, 2019. Ogden's defense strategy was to point to missing and alleged destruction of evidence in the case. His strategy included an allegation that Sontag had not discovered the bus tickets during his initial search, but later–after the box was searched a second time. Before trial, the State gave Ogden a redacted body camera video it intended to introduce, showing an exchange between Ogden and Sontag in the parking lot. The video led to two issues during the trial: (1) statements made by Ogden to the officers; and (2) a statement about one officer being "nervous" upon finding a tactical vest in Ogden's car.

*1. Ogden's statements in the video.*

Ogden objected to the State's redaction of the video under the doctrine of completeness, arguing in a pretrial hearing, "[t]hey talk about drugs in the box but don't mention bus tickets and they've redacted that." Discussing the officer's inventory of the box, Ogden continued, "at the

---

[1] This fact is disputed. The bullets are not in evidence. They were destroyed at Wirshing's request.
[2] *Miranda v. Arizona*, 384 U.S. 436 (1966).

time of the inventory, there's no bus tickets in the box. It's not until almost ten minutes later the bus tickets suddenly appear in the box and the State has redacted this part of the video evidence." The district court declined to rule on Ogden's objection at that time, reserving ruling until the State introduced the video at trial.

During trial, outside the presence of the jury, the judge and counsel had several exchanges about the admission of the video exhibit. The following is the first discussion:

THE COURT: What it is, my view of the video, the officer is basically explaining, look, here is what we found in your car, we found dope, we found your gun, we can match the bullets up, the bullets are the same, he yells at the officer, "What caliber are the bullets?"

".45."

"All right. Same bullets."

And then he says, "Anything else in there," and the officer says, "We also found bus tickets."

And the officer comes over and he says, "You found bus tickets with Ogden on it?"

"Yeah."

"Where were those?"

"In the same box."

And you don't want any of that in?

[PROSECUTOR]: It's not that I don't want that in, I do want that in, don't get me wrong, but in my initial redactions, my thought was that's not going to come in over an objection[.] [I]f they want that in along with denials that any of the stuff is his, because that's what is also included, I believe.

THE COURT: It's his denial. He looks surprised the bus ticket would be found in the box. He says, "In the box? That's not in the box."

I didn't see anywhere else in the tape where the bus tickets were mentioned. Am I wrong about that?

[DEFENSE]: No, you're right about that, Judge.

THE COURT: So I don't see how his denial of the bus tickets is relevant to any other part of the tape for completeness because the bus tickets are not in any other part of the tape. So if the state excludes all that, his response to the bus ticket doesn't complete anything.

[DEFENSE]: Your Honor, I think it's part of the completeness doctrine. The reason I think that it is is because the officer that comes over and says we found bus tickets in there, previously in the tape had inventoried the box and there hadn't been bus tickets in there when he did that. There was no bus tickets in there. He says there's

4

cash, there's ammunition, needles and there's meth. And Officer Wirshing said, "There's meth?" And that's when he took him over.

THE COURT: So if you want to cross-examine the officer that is called or put him on and say, "Hey, you didn't identify bus tickets, did you," and then for some reason you want to the play the contemporaneous video where he then says the bus tickets, I would probably let the officer's statements in. I don't think I would let the defenses [sic] statement in, given that you're offering it because it's not complete -- you're the one that is offering it.

[DEFENSE]: Understood. I would even be happy with the officer's statement coming in and cutting it off before he says, "What bus tickets." *It's not the defendant's statement we want in, it's the officer's statement*. They are now alleging bus tickets for the first time and that's only [sic] place they allege it in the video.

[PROSECUTOR]: We can make that happen, Judge.

THE COURT: You're good with that?

[PROSECUTOR]: Yeah. If he's not going to get his client's statement in and he wants my officer's.

THE COURT: Just your officer saying there's bus tickets in the thing. You agree with that?

[DEFENSE]: Yeah, that's fine. And if we decide we want his [Ogden's] response in, we can have him testify and show that video.

THE COURT: Have who testify?

[DEFENSE]: Our defendant.

THE COURT: Well, no. He can testify. You can't show the video.

[DEFENSE]: I see. Okay.

THE COURT: Because it's still hearsay.

(Emphasis added).

During the State's case-in-chief, Sontag testified to finding the black security lockbox inside Ogden's vehicle. On cross-examination, Sontag acknowledged he did not remember seeing bus tickets when he first opened the box. When Wirshing took the stand, the parties stipulated to admit the body camera video, which showed Sontag opening the box. After the video played, the court recessed for the day. The next day, Ogden and the State resumed arguments about the video. Ogden requested to play another portion of the video in which Wirshing references bus tickets:

[DEFENSE]: Video of Officer Sontag coming over and telling Officer Wirshing and the defendant that there are bus tickets.

THE COURT: The part I said you couldn't play yesterday?

[DEFENSE]: That was before Officer Sontag testified.

5

THE COURT: Okay. What did officer testify [sic] that opened up your client's hearsay?

[DEFENSE]: Your Honor, Officer Sontag testified when I asked him about having told the defendant and Officer Wirshing about the bus tickets, that he didn't remember doing that. I asked him if he had seen the video, he said he couldn't remember any of that. It's Officer Sontag's late disclosure of the bus tickets, the defense finds that suspicious. And the way that he comes over and talks about it --

THE COURT: So he's already shown the part where he comes over when the officer is standing next to your client and he says, "what else did you find," and he says, "the bus tickets," and he said, "were they in the box," and he starts walking towards him and he said, "yeah, they were in the box," or, "yeah, they were."

[DEFENSE]: Your Honor, we are not wanting it for the hearsay value at all. I would agree to a limiting instruction –

THE COURT: Stop. What in addition to that part do you want to play? Your client's reaction?

[DEFENSE]: Well, it's in there but it's part of the completeness doctrine, your Honor.

THE COURT: Didn't I rule on that yesterday?

[DEFENSE]: I believe it was before Officer Sontag's testimony. Officer Sontag, I believe, testified that he did not say this in front of the defendant.

. . .

It's not offered for the truth of the matter asserted by my client. I would be happy to not discuss what my client said or his denial - -

Ogden also requested that the court allow him to play an earlier portion of the video where Wirshing repeated a statement made by Ogden, "if you're telling me the truth you didn't know it was in that box, you don't know anything about the box," and the district court agreed. The court explained:

THE COURT: So I think the defense can offer the statements of the police officers because those are statements of a party opponent. Now, I appreciate the State's position that some of that is the officer repeating what the other person said, but by repeating it the way he did, he is arguably adopting those statements, and so I think that they are admissible as statements of a party opponent by the defense. I think that in fairness to what happened before where the State cut that off where they were just sort of unattached statements of the police officer about what they found, I think in order to put those into fair light, they ought to be played in relation to the defense's immediate response to those alleged findings. Furthermore, I think the defendant's -- as I thought about it and have seen it again, I think the defendant's immediate responses are excited utterances.

6

As the trial proceeded, and Ogden continued his examination of Wirshing, the court requested a bench conference. As the attorneys approached, the court explained:

> THE COURT: Based on what you told me before, I'm not going to let you use the second video, the one that shows him with the -- where your client reacts to the finding of the bus tickets because the more I think about it, the only reason that came in at all is because you wanted it in, and therefore, my concern about Mr. Guy -- my concern about the State putting in a hearsay statement of the officers in abstract is irrelevant.
>
> . . .
>
> We can talk about it further. I wanted to give you that heads-up. I've been thinking about, as we sat here, and I realize you're the one that wanted that in. The more I think about it, the more you're the one that wanted it in means I'm not going to let you bootstrap your client's hearsay statement in simply because you wanted the officer –

Thus, the district court ultimately did not allow Ogden to admit the additional portion of the video.

### 2. *The officer's statement about being "nervous."*

Before the trial, Ogden had made an objection in limine to the video including a statement made by Wirshing about feeling "nervous" when he found a tactical vest inside Ogden's vehicle. During the argument, the district court acknowledged it was likely not relevant and should be redacted:

> THE COURT: I don't think the fact that the vest makes the officer nervous is relevant. Had you charged him with possession with intent, the gun and the vest and all that might be more relevant because that's more consistent with a dealer, but you didn't charge it that way, so it's not relevant.
>
> [THE STATE]: I don't mean to cut the [c]ourt off, I'm sorry. The only thing I'm taking out of that portion is not the whole portion itself, just the officer saying, "hey, it makes me nervous when I see people rolling around with tactical gear and firearms."
>
> . . .
>
> THE COURT: I think things found in the vehicle that he admits to makes it more likely other things found in the vehicle are his, as well. It goes to his ownership, control and possession of the items in the car.
>
> [DEFENSE COUNSEL]: Judge, I'd just argue he has claimed ownership of the car and that it's a waste of everyone's time to talk about a tac vest inside it.
>
> THE COURT: I appreciate that, but I think the more things he has in that car that are attributable to him is evidence from which an inferences [sic] that other things are found in the car are also his. So I think it is relevant. [Except] the part about, quote, "it makes me nervous."

Later in the trial, the State prepared to play the video for the jury that referenced the statement the district court had instructed it to redact, but the State had failed to follow through with the court's directive. The defense again objected to the officer's statement about being nervous being played to the jury, stating, "Judge, I thought we already agreed to take it out." The district court reconsidered its in limine ruling and said:

> Well, I originally asked them to take it out because I thought the relevance was minimal there. At this point I'm going to go weigh everything under 403, include relevance, prejudice, which I don't think there is really any. I don't think that's a harmful statement. The officer said it kind of jokingly. And the concern I have is the waste of time and the trial and everything else, I don't think it causes any harm to have it in, so I'm going to go forward with it.
>
> [DEFENSE COUNSEL]: Okay.

*3. The PSI.*

Following presentation of the evidence, the jury found Ogden guilty of possession of a controlled substance, and possession of drug paraphernalia. The district court ordered a presentence investigation. When the PSI was filed with the court, it contained statements to which Ogden later objected. Ogden also objected to police reports and several hundred pages of medical records in the PSI that related to a different case pending against him.[3] The district court continued the sentencing hearing and requested briefing on the issue. The district court agreed to strike the medical records but not the police records. The district court then sentenced Ogden to seven years in prison with two years fixed for possession of methamphetamine, and time served for possession of paraphernalia. Ogden's appeal was first heard by the Court of Appeals, which affirmed. Ogden then petitioned for review to this Court, which was granted.

## II. ISSUES ON APPEAL

1. Did the district court err by preventing Ogden from presenting his response to the officer's statement about the bus tickets as evidence even though the court had determined his response qualified as an excited utterance?

2. Did the district court err by allowing the State to present evidence which the district court determined was not relevant?

3. Is there an accumulation of trial errors that would require Ogden's conviction to be vacated even if each error is individually harmless?

4. Did the district court err by failing to redline the PSI?

---

[3] That case has since been adjudicated and appealed. *See State v. Ogden*, __ Idaho __, 519 P.3d 1198 (2022).

"When reviewing the trial court's evidentiary rulings, this Court applies an abuse of discretion standard." *State v. Chambers*, 166 Idaho 837, 840, 465 P.3d 1076, 1079 (2020) (quoting *State v. Jeske*, 164 Idaho 862, 867, 436 P.3d 683, 688 (2019)). Whether a statement is hearsay at all is a question of law. *State v. Roman-Lopez*, No. 49565, 2023 WL 1807021, at *5 (Idaho Feb. 8, 2023), but here the parties agree that the statement was hearsay and argue whether an exception applies. That question is subject to an abuse of discretion standard. *Id*. "The question of whether evidence is relevant is reviewed de novo, while the decision to admit relevant evidence is reviewed for an abuse of discretion." *State v. Hall*, 163 Idaho 744, 781, 419 P.3d 1042, 1079 (2018) (quoting *State v. Shutz*, 143 Idaho 200, 202, 141 P.3d 1069, 1071 (2006)). "Sentencing decisions are also reviewed using an abuse of discretion standard." *State v. Jones*, 167 Idaho 353, 358, 470 P.3d 1162, 1167 (2020) (quoting *State v. Matthews*, 164 Idaho 605, 607, 434 P.3d 209, 211 (2019)).

When this Court reviews an alleged abuse of discretion by a trial court, the sequence of inquiry requires consideration of four essentials: "whether the trial court: (1) correctly perceived the issue as one of discretion; (2) acted within the outer boundaries of its discretion; (3) acted consistently with the legal standards applicable to the specific choices available to it; and (4) reached its decision by the exercise of reason." *State v. Bodenbach*, 165 Idaho 577, 591, 448 P.3d 1005, 1019 (2019) (quoting *Lunneborg v. My Fun Life*, 163 Idaho 856, 863, 421 P.3d 187, 194 (2018)).

## IV. ANALYSIS

**A. The district court did not abuse its discretion by preventing Ogden from presenting his response to Officer Sontag's statement about the bus tickets.**

Ogden challenges the district court's decision to exclude his response to Sontag about the bus tickets on two grounds. First, Ogden alleges the district court erred in excluding his statement after acknowledging it constituted an excited utterance. Second, Ogden argues the district court separately erred by concluding the completeness doctrine did not apply to his statements. The State argues that Ogden has not preserved this claim on appeal. From the State's perspective, Ogden expressly agreed to exclude his response to the video, and any error from its exclusion is barred under the doctrine of invited error.

*1. Invited error doctrine*

The State alleges that Ogden's claim is barred under the doctrine of invited error. As the State contends, Ogden explicitly conceded he was not trying to introduce his response to Sontag, agreed to cut the video, and offered to mute his response. The State maintains that Ogden's claim to the contrary on appeal is unpreserved or barred under the doctrine of invited error. Ogden claims his argument was preserved because he repeatedly requested to include his response to Sontag.

"The doctrine of invited error applies to estop a party from asserting an error when his or her own conduct induces the commission of the error." *State v. Norton*, 151 Idaho 176, 187, 254 P.3d 77, 88 (Ct. App. 2011) (citations omitted). It prevents a party who "caused or played an important role in prompting a trial court" to make a particular decision from "later challenging that decision on appeal." *State v. Blake*, 133 Idaho 237, 240, 985 P.2d 117, 120 (1999). "One may not complain of errors one has consented to or acquiesced in." *Norton*, 151 Idaho at 187, 254 P.3d at 88 (citing *State v. Caudill*, 109 Idaho 222, 226, 706 P.2d 456, 460 (1985)). As a result, even if the district court erred, the invited error doctrine bars an appellant from complaining of the error that the appellant acquiesced to or invited. *City of Middleton v. Coleman Homes, LLC*, 163 Idaho 716, 727, 418 P.3d 1225, 1236 (2018).

On the first day of trial, outside the presence of the jury, the district court heard arguments about a series of exhibits. The first exhibit was State's Exhibit 1, which was body camera video from Wirshing. Attorneys for both sides argued why portions of the State's exhibit should or should not be redacted. Ogden's attorney argued, "I would even be happy with the officer's statement coming in and cutting it off before [Ogden] says, 'What bus tickets[?]' It's not the defendant's statement we want in, it's the officer's statement. They [the State] are now alleging bus tickets for the first time and that's [the] only place they allege it in the video." The State responded that it "can make that happen," explaining, "Yeah. If he's not going to get his client's statement in [then] he wants my officer's." Ogden's attorney agreed with the decision, and explained, "Yeah, that's fine. *And if we decide we want his response in, we can have him testify and show that video*." (Emphasis added). In response, the district court explained, "Well, no. He can testify. You can't show the video." Ogden's attorney responded, "I see. Okay."

On appeal, Ogden claims that, along with those initial arguments, he renewed his request to the district court to play his response to the officer. In support, Ogden cites two portions of the record. The first is a short exchange, in which the district court stated, "Stop. What in addition to that part do you want to play? Your client's reaction?" Ogden replied, "Well, it's in there but it's

10

part of the completeness doctrine, your Honor." The second excerpt Ogden points to is a statement from the district court in response to Ogden asking, "Judge, is it possible that I can edit the exhibit so my client's actual denials to the questions are muted so we can hear Officer Wirshing and Officer Sontag–[.]" The district court replied, "[s]how me the video you want to show. [Video published to the Court.] So that's the exact same video you played yesterday up to the part where the officer said it was in the box and then the rest of it was cut off."

After hearing arguments from the State, the district court ultimately agreed to admit the video as Ogden requested, and added:

> THE COURT: I think that in fairness to what happened before where the State cut that off where they were just sort of unattached statements of the police officer about what they found, I think in order to put those into fair light, they ought to be played in relation to the *defendant's immediate response* to those alleged findings. Furthermore, I think the defendant's -- as I thought about it and have seen it again, I think the defendant's immediate responses are *excited utterances*.

(Emphasis added).

The district court sua sponte raised the prospect of admitting Ogden's statements as an excited utterance contrary to the State's argument. Neither the State nor Ogden challenged the district court's (brief) conclusion that Ogden's response on the video was admissible as an excited utterance. *See State v. Castrejon*, 163 Idaho 19, 22, 407 P.3d 606, 609 (Ct. App. 2017) (explaining that a party does not invite error by merely acquiescing to the end of a court's colloquy when the party's acquiescence does not induce the error and the court sua sponte raised the issue). Indeed, though Ogden's focus during these arguments was on admitting the officer's statement that prompted Ogden's response, the district court's decision that Ogden could play his immediate response coupled with Ogden's arguments throughout the motion in limine hearing in which he repeatedly argued that Ogden's statements were admissible under the completion doctrine is sufficient to preserve the argument on appeal. The district court later changed its ruling, and this portion of State's Exhibit 1 was never played for the jury. As a result, we hold that Ogden is not barred under the doctrine of invited error from arguing that the district court erred in preventing him from presenting his response to Sontag's statement.

### 2. Excited utterance

Ogden next argues that because the district court found that Ogden's response to Sontag finding the bus tickets was an excited utterance, the court's subsequent decision concluding that the statement was inadmissible is erroneous.

11

On the second day of trial, as we note above, after the district court admitted a portion of the body camera video exchange between Sontag and Ogden, the district court ruled, "I think the defendant's—so I thought about it and have seen it again. I think the defendant's immediate responses are excited utterances." Ogden never argued his response to the officers qualified as an excited utterance. Indeed, the only time the words "excited utterance" appear in the transcript are when the district court raised it sua sponte. Even so, later that day, the district court called a bench conference and explained that it had changed its mind:

> Based on what you told me before, I'm not going to let you use the second video, the one that shows him with the -- where your client reacts to the finding of the bus tickets because the more I think about it, the only reason that came in at all is because you wanted it in, and therefore, my concern about Mr. Guy -- my concern about the State putting in a hearsay statement of the officers in abstract is irrelevant.

> You wanted that part in and I told you weren't going to be able to use completeness to get your client's statement in by putting that part in yourself. So I don't think it's fair to let you add onto it when I specifically said you couldn't do [it] yesterday. Does that make sense?

Ogden now claims on appeal that his statements qualified under an exception to the hearsay rule because either he *or* the State could introduce the statement as evidence. Ogden argues the district court incorrectly conducted its analysis about the admissibility of the statement under Idaho Rule of Evidence 801(d)(2), which provides that a statement is not hearsay if the statement is offered against a party-opponent. But Ogden maintains that just because he cannot present his own statement as non-hearsay does not mean he cannot present his own statement as an exception to the hearsay rule. Ogden contends that, as the district court initially found, because his statements were made in response to a startling statement by Sontag, his statement qualified as an excited utterance. The State maintains that Ogden's claim of error is misplaced.

A statement that was not made while testifying in court that is offered to prove the truth of the matter asserted is hearsay. I.R.E. 801(c). "Hearsay is not admissible except as provided by these rules or other rules promulgated by the Supreme Court of Idaho." I.R.E. 802 "The following are not excluded by the rule against hearsay, regardless of whether the declarant is available as a witness: . . . (2) Excited Utterance. A statement relating to a startling event or condition, made while the declarant was under the stress of excitement that it caused." I.R.E. 803(2)."

The excited utterance exception "has two requirements: '(a) There must be an occurrence or event sufficiently startling to render inoperative the normal reflective thought processes of an

12

observer; and (b) the statement of the declarant must have been a spontaneous reaction to the occurrence or event and not the result of reflective thought.'" *State v. Parton*, 154 Idaho 558, 564, 300 P.3d 1046, 1052 (2013) (quoting *State v. Poe*, 139 Idaho 885, 904, 88 P.3d 704, 723 (2004)). Whether a statement is "self-serving" "is a factor to be weighed in determining whether [the statement] was a product of reflective thought," rather than a spontaneous reaction. *State v. Burton*, 115 Idaho 1154, 1156, 772 P.2d 1248, 1250 (Ct. App. 1989).

We conclude that under Idaho law, Ogden's statement was not an excited utterance. This Court has identified a series of factors that the trial court can consider when determining whether a statement qualifies as an excited utterance. *State v. Poe*, 139 Idaho 885, 904, 88 P.3d 704, 723 (2004). Those factors include the lapse of time between the startling event and the statement, the age and condition of the declarant, whether the statement was made in the declarant's self-interest, whether the statement was made in response to a question or volunteered, and the nature of the condition or event. *Id.*

While Ogden's response was made without a significant lapse in time after the officer found the tickets, Ogden made the statement in response to the officer stating that he found the bus tickets. This was a statement of fact, not a startling event, and little about the officer's statement is sufficiently startling to provoke a spontaneous response without reflection. Given the nature of the other items located inside the box, and the significance of finding Ogden's name on the bus tickets inside to connect Ogden as an owner to those items, denying that the bus tickets were in the box alongside methamphetamine has a self-serving purpose.

The purpose of the excited utterance exception is not to exclude from the general rule against hearsay a response to an unexpected or damaging comment; the rule excepts from hearsay an event that is *so* startling as to render a person unable to reflect on the traditional thought process. Under the second requirement, the exception requires a spontaneous and uncalculated reaction. The statement Ogden made in response to Sontag finding his bus tickets was, "in the box? That's not in the box." Ogden provides no argument to support the notion that this statement was a spontaneous reaction. For these reasons, we affirm the district court's decision excluding Ogden's response as hearsay with no exception.

### 3. *Completeness doctrine*

Ogden separately contends that the district court's refusal to allow him to present his response to Sontag's statement was also improper under the completeness doctrine. The State

13

maintains that the video with Sontag stating he found the bus tickets was admitted at Ogden's *own request* and, thus, Ogden cannot now claim he is the adverse party in order to require that his *own response* be introduced to complete a portion of the video that he wanted introduced.

Idaho Rule of Evidence 106 identifies the confines of the completeness doctrine:

> If a party introduces all or part of a writing or recorded statement, an adverse party may require the introduction, at that time, of any other part--or any other writing or recorded statement--that in fairness ought to be considered at the same time.

I.R.E. 106; *see also State v. Bingham*, 124 Idaho 698, 699, 864 P.2d 144, 145 (1993) (noting hearsay may be admissible under I.R.E. 106).

First, we note that Ogden concedes in his brief on appeal that he only requested the State include Sontag's statement—not Ogden's response—under the completeness doctrine. Even so, Ogden now claims that this issue is preserved for appeal because the district court's ultimate decision on the completeness doctrine was based, in part, on Ogden's response. *Id.* (citing *State v. Jeske*, 164 Idaho 862, 868, 436 P.3d 683, 689 (2019)). Consistent with how this Court has recently clarified its preservation standards, "a party preserves an issue for appeal by properly presenting the issue with argument and authority to the trial court below and noticing it for hearing *or* a party preserves an issue for appeal if the trial court issues an adverse ruling. *Both are not required*." *State v. Miramontes*, 170 Idaho at 920, 517 P.3d 849, 853–54 (2022) (emphasis added). Thus, Ogden preserved this issue for appeal.

Even so, we conclude that the district court did not abuse its discretion in declining to admit the statement under Rule 106. Under the common-law rule that underpins Idaho Rule of Evidence 106, the reason for the completion doctrine is that there is a "danger that an out-of-context statement may create such prejudice that it is impossible to repair by a subsequent presentation of additional material." *Beech Aircraft Corp. v. Rainey*, 488 U.S. 153, 171 n.14 (1988). Thus, Rule 106 "requires the admission of those portions of the statement that are 'necessary to qualify, explain or place into context the portion already introduced.'" *State v. Prasertphong*, 210 Ariz. 496, 114 P.3d 828, 831 (Ariz. 2005) (quoting *United States v. Branch*, 91 F.3d 699, 728 (5th Cir. 1996)); *see also Bingham*, 124 Idaho at 699-700, 864 P.2d at 145-46 (noting evidence may be admissible under I.R.E. 106 to provide context). But here, as the district court found, Ogden's denial that officers found the bus tickets in the box does not provide context to the statements already in evidence.

Because this was the only portion in the video that mentioned the bus tickets, the district court explained "I don't see how his denial of the bus tickets is relevant to any other part of the tape for completeness because the bus tickets are not in any other part of the tape." Ogden at first agreed, noting that the only portion of the video he wanted in was the part when Sontag found the bus tickets, contending that this was necessary to complete the portion of the video where Sontag took an inventory of the box but did not mention bus tickets. The district court found it would "probably let the officer's statements in" but not Ogden's denials. Ogden responded, "Understood. I would even be happy with the officer's statement coming in and cutting it off before [Ogden] says, 'What bus tickets.' It's not the defendant's statement we want in, it's the officer's statement."

But then after Sontag testified, Ogden renewed his request to play a portion of the video:

> [P]rior to [Officer Sontag stating he found the bus ticket in the box], we hear Officer Wirshing ask [Ogden] was this yours and he makes denials. The point is it was at that point that Officer Sontag came over, it was because of those denials that he suddenly comes up with the bus tickets in the box. The context is important. Because if he is just announcing, "hey, I found a bus ticket in a box," that's different than standing there listening, hearing the defendant say that's not my stuff and then saying, well, I found a bus ticket.

This time, Ogden argued he wanted to introduce *his initial denial* that he did not know what was inside the box because that statement was what prompted Sontag to state that he found the bus tickets. Ogden was the proponent of admitting Sontag's statement about the bus tickets, and Ogden's response to Sontag denying that bus tickets were in the box was unnecessary to complete Sontag's statement nor would including it have provided any context. The district court's ruling remained the same; Ogden's statement was not admitted.

"When reviewing the trial court's evidentiary rulings, this Court applies an abuse of discretion standard." *State v. Chambers*, 166 Idaho 837, 840, 465 P.3d 1076, 1079 (2020) (quoting *State v. Jeske*, 164 Idaho 862, 867, 436 P.3d 683, 688 (2019)). Under that standard, this Court examines "whether the trial court: (1) correctly perceived the issue as one of discretion; (2) acted within the outer boundaries of its discretion; (3) acted consistently with the legal standards applicable to the specific choices available to it; and (4) reached its decision by the exercise of reason." *State v. Bodenbach*, 165 Idaho 577, 591, 448 P.3d 1005, 1019 (2019) (quoting *Lunneborg v. My Fun Life*, 163 Idaho 856, 863, 421 P.3d 187, 194 (2018)).

The district court did not abuse its discretion in concluding that the statement about bus tickets not being in the box did not satisfy the requirements under Rule 106. The district court

properly perceived the evidentiary issue as one of discretion, acted within the outer bounds of its discretion, applied the proper legal standards, and reached its decision by an exercise of reason.

**B.** **The district court erred by allowing the State to present evidence that the district court determined was not relevant, but this error was harmless.**

After officers searched Ogden's car, Wirshing questioned Ogden about what was found inside. Officers uncovered a gun, tactical vest, and locked box. Ogden told the officers he purchased the gun from the same people he purchased the car from and explained he had recently bought the vest at a pawn shop. Wirshing stated, "it makes me nervous" to find something like that, referring to the tactical vest.

Ogden moved to exclude the officer's statement, arguing it was not relevant. The district court at first agreed, explaining, "I don't think the fact that the vest makes the officer nervous is relevant." However, the State, failed to redact the video as ordered. Ogden made a second objection to the statement being included in the video. The district court then changed course and without directly commenting on relevance under Rule 401, stated:

> Well, I originally asked them to take it out because I thought the relevance was minimal there. At this point I'm going to go weigh everything under 403, include relevance, prejudice, which I don't think there is really any. I don't think that's a harmful statement. The officer said it kind of jokingly. And the concern I have is the waste of time and the trial and everything else, I don't think it causes any harm to have it in, so I'm going to go forward with it.

We take this statement from the district court to mean that it ultimately found the statement about the officer's nervousness minimally relevant and allowed the State to present the video with the statement included because it was not unfairly prejudicial under Rule 403. The district court reasoned it did not want to delay the trial further while the prosecutor redacted the exhibit.

"Relevant evidence is admissible unless these rules, or other rules applicable in the courts of this state, provide otherwise." I.R.E. 402. Evidence is relevant if it is probative, having "any tendency to make a fact more or less probable" and material, being "of consequence in determining the action." I.R.E. 401. "Whether a fact is 'of consequence' or material is determined by its relationship to the legal theories presented by the parties." *State v. Ochoa*, 169 Idaho 903, 913, 505 P.3d 689, 699 (2022) (quoting *State v. Garcia*, 166 Idaho 661, 670, 462 P.3d 1125, 1134 (2020)). Further, whether an issue is relevant requires understanding those theories "concerning the crime charged," the elements of that crime, and the ultimate issue that the jury is asked to determine. *Garcia,* 166 Idaho at 671 n.3, 462 P.3d at 1135 n.3. "The question of whether evidence

16

is relevant is reviewed de novo, while the decision to admit relevant evidence is reviewed for an abuse of discretion." *State v. Hall*, 163 Idaho 744, 781, 419 P.3d 1042, 1079 (2018) (quoting *State v. Shutz*, 143 Idaho 200, 202, 141 P.3d 1069, 1071 (2006)).

On appeal, Ogden argues the district court was correct to initially exclude the statement about the officer's nervousness as irrelevant, but the court erred when it changed its mind and allowed the statement in. The State counters that the district court did not abuse its discretion in admitting the statement because the court conducted a Rule 403 balancing test on the record and found that the probative value of the comment was "relatively minimal" but determined there was no prejudice because it was a "harmless statement."

This Court has explained that "minimally relevant" evidence is admissible as background information. *State v. Garcia*, 166 Idaho 661, 672, 462 P.3d 1125, 1136 (2020). That Ogden acknowledged the tactical vest was his is relevant to show that other items found in the vehicle (including the drugs and paraphernalia) were likely his as well. I.R.E. 401. But the extraneous statement the officer made about being nervous had nothing to do with Ogden's ownership of the vest itself. Indeed, while the threshold for admitting relevant evidence is low, the evidence must have *some* relevancy. I.R.E. 401. "The Idaho Trial Handbook observes that Idaho Rule of Evidence 401 'requires only minimal relevance, treating evidence as relevant if it has any tendency to make facts more or less probable.'" *Garcia*, 166 Idaho at 671 n.3, 462 P.3d at 1135 n.3 (quoting D. Craig Lewis, IDAHO TRIAL HANDBOOK § 13:1 (2d ed. 2005)). The district court acted outside the outer bounds of its discretion in glossing over this evidentiary principle in admitting the officer's statement about being nervous. The officer's statement had no bearing on any fact of consequence, and, thus, it was an abuse of discretion to admit it under Rule 401. We are also troubled that the prosecutor appears to have ignored the district court's instruction to redact the video[4]. The prosecutor here disregarded the district court's explicit ruling to redact Wirshing's statement about being nervous from the video and left it to the district court to reweigh the evidence and attempt

---

[4] The transcript shows the frustration of the district court in trying to deal with objections to, and redactions of, the video evidence *during* trial. The court's frustration was well-placed. The district court also showed concern for wasting jurors' time while waiting for the parties to properly prepare the evidence they wished to present in trial. The convoluted back-and-forth is the product of the parties failing to have their video evidence ready to present to the jury – particularly when the district court had ordered that portions of the exhibit were to be redacted – an order that the State simply ignored. We urge courts and counsel to take affirmative steps to ensure that inadmissible portions of video or audio evidence are properly edited and decided upon well before trial to avoid situations like this case.

to salvage things as the jury unnecessarily waited. This is behavior we continue to see too often, and which led to the erroneous decision about the statement's relevance.

With that said, as the State concedes, while the district court abused its discretion in admitting the officer's statement about being nervous, we hold that this error was harmless. "Harmless error is 'error unimportant in relation to everything else the jury considered on the issue in question, as revealed in the record.'" *Garcia*, 166 Idaho at 674, 462 P.3d at 1138 (citations omitted) (quoting *Yates v. Evatt*, 500 U.S. 391, 403-04 (1991)). "The probative force of evidence untainted by error against a defendant must be examined and weighed as against the probative force of the error itself." *Id*. at 675, 462 P.3d at 1139. "When the effect of the error is minimal compared to the probative force of the record establishing guilt 'beyond a reasonable doubt' without the error, it can be said that the error did not contribute to the verdict rendered and is therefore harmless." *Id*. at 674, 462 P.3d at 1138.

The State suggests that the prejudicial effect from Wirshing's comment was minimal in the context of the totality of the evidence adduced at trial. We agree. The context with which the statement was admitted accompanied Wirshing's reassurance that it was fine for Ogden to possess the tactical vest, and that it was legal for him to do so. In weighing the probative force of the error against the probative force of the evidence against Ogden, we conclude that the error did not contribute to the jury's verdict.

The video showed Wirshing finding a methamphetamine pipe in Ogden's pocket. Ogden admitted that he picked up the pipe, hoping he would find something inside it. The jurors were also shown video of officers finding the locked box inside Ogden's vehicle and uncovering methamphetamine, needle caps, cash, ammunition, and the bus tickets. The officers corroborated this evidence and testified that they found the pipe in Ogden's pocket and, later, a locked box inside his vehicle that contained methamphetamine, needle caps, cash, ammunition, and the bus tickets. Ogden then testified that he found the methamphetamine pipe, put it in his pocket, and admitted to being a methamphetamine user. He testified to owning the items found inside the vehicle, including the tactical vest and a gun. While Ogden denied he owned the locked box inside the car, Ogden knew the box was locked with a combination and not a key, and admitted he owned the bus tickets bearing his name that were found inside the box. As a result, the evidence against Ogden, untainted by the error, established beyond a reasonable doubt that Ogden was guilty of possession of methamphetamine and possession of paraphernalia.

Weighing the evidence against the probative force of the error itself, Ogden claims that Wirshing's comment could have made jurors more likely to view Ogden as someone involved in the drug trade and abandon their reasonable doubts about his possession of methamphetamine and the items in the locked box. *See generally State v. Pierce*, 137 Idaho 296, 299 (Ct. App. 2002) (pointing out the "recognized propensity" that people involved in dealing drugs will carry firearms)). Ogden's argument is unpersuasive. Ogden testified to owning the tactical vest. The jury was also presented with significant evidence supporting the presence of methamphetamine in the vehicle when Ogden was arrested, along with body-camera video of Ogden admitting he was an addict and had hoped to find drug residue in the pipe after Wirshing found the pipe inside Ogden's pocket.

The probative force of Wirshing's statement was "unimportant in relation to everything else the jury considered on the issue in question." *Garcia*, 166 Idaho at 674, 462 P.3d at 1138. Thus, we hold that because the statement had no tendency to make a fact of consequence more or less probable, the statement was irrelevant, but the district court's decision to admit it was harmless.

## C.     A single error does not require Ogden's conviction to be vacated.

Ogden argues that the errors he has alleged combined to affect the outcome of his entire case. As a result, Ogden contends that even if this Court holds the individual errors were harmless, his judgment should still be vacated, and his case should be remanded for a new trial because the accumulation of errors deprived him of the right to a fair trial. The State insists the cumulative error doctrine is inapplicable to Ogden's case because Ogden has not shown multiple errors.

"Under the doctrine of cumulative error, a series of errors, harmless in and of themselves, may in the aggregate show the absence of a fair trial." *State v. Perry*, 150 Idaho 209, 230, 245 P.3d 961, 982 (2010). Even so, "a necessary predicate to the application of the [cumulative error] doctrine is a finding of more than one error." *Id*.

Ogden points to two errors on appeal related to the trial: (1) the district court erred by preventing Ogden from presenting his response to Sontag's statement about the bus tickets, and (2) the district court erred by allowing the State to present evidence the district court determined was not relevant. But as we have discussed, Ogden has only established that the district court erred in admitting irrelevant evidence, but he has not proven more than one error or shown that the errors "were of such magnitude that [the defendant] was denied a fair trial." *State v. Moore*, 131 Idaho

19

814, 823, 965 P.2d 174, 183 (1998). Because the district court did not err in excluding Ogden's response to Sontag, and because the court's decision to admit irrelevant evidence was harmless, we hold that the cumulative error doctrine does not apply.

**D.    The district court abused its discretion in failing to redline the portions of the PSI it had agreed to correct, but did not abuse its discretion in declining to redline portions describing conduct Ogden was acquitted of.**

At Ogden's sentencing hearing, he objected to the inclusion of certain materials in the PSI. Following arguments from Ogden, the district court agreed to continue the hearing to give both sides a chance to brief the issue. Ogden objected to the PSI's inclusion of police reports from a pending case involving sexual abuse of a minor and the victim's medical records. The State claimed the materials were appropriate to consider at sentencing.

The district court ultimately determined it would strike the medical records from the PSI. But the district court did not agree to strike the police reports. The court explained that police reports stating that Ogden gave his victim methamphetamine during a sexual incident were reliable because "the records submitted fairly well substantiate those crimes, they are reliable records by law enforcement officers." The court also explained that "the case law is clear the [c]ourt can consider other charges, even if unproved[.]" Following that ruling, the district court asked if there were any other corrections or proposed changes to the PSI. Ogden noted seven that he wanted redlined. On appeal, Ogden limits his arguments to the five the district court considered.

A district court's denial of a motion to strike or delete portions of a PSI is reviewed on appeal for an abuse of discretion. *State v. Molen*, 148 Idaho 950, 961, 231 P.3d 1047, 1058 (Ct. App. 2010). I.C.R. 32(e)(1). Under that standard, this Court examines "whether the trial court: (1) correctly perceived the issue as one of discretion; (2) acted within the outer boundaries of its discretion; (3) acted consistently with the legal standards applicable to the specific choices available to it; and (4) reached its decision by the exercise of reason." *Bodenbach*, 165 Idaho at 591, 448 P.3d at 1019 (quoting *Lunneborg*, 163 Idaho at 863, 421 P.3d at 194).

Idaho Criminal Rule 32 governs presentence investigation reports, and requires the report contain, among other things

> the description of the situation surrounding the criminal activity with which the defendant has been charged, including the defendant's version of the criminal act and the defendant's explanation for the act, the arresting officer's version or report of the offense, where available, and the victim's version, where relevant to the sentencing decision.

20

I.C.R. 32(b).

Ogden makes two distinct sets of arguments pertaining to the PSI. First, he argues that the district court affirmatively agreed to strike five statements but ultimately failed to do so. Second, he claims the district court ordered the victim's medical records from his other case to be struck from the PSI but that two copies of those medical records still appeared in the records sent to the appellate court.

### 1. *The five proposed corrections.*

Ogden maintains that despite the district court "affirmatively accepting" his corrections, the court refused to redline the PSI. Ogden's assertion misconstrues the district court's decision. Indeed, a review of the record makes clear that the court only agreed to *consider* Ogden's request to strike the statements he claimed were incorrect. The district court responded to each of the proposed corrections to the PSI Ogden raised by stating that the court would take the correction "into consideration," but the court did not inform Ogden it would "affirmatively accept" his proposed corrections. We will examine each statement in turn.

First, Ogden argued the PSI incorrectly stated he received a probation violation for driving under the influence and possession of paraphernalia while on probation. Ogden claimed the PSI incorrectly stated he was charged with possession of paraphernalia. The district court did not accept this change but responded that it "appreciate[d]" that Ogden thought the statement was inaccurate, and the court would "consider that personally, but I'm not in a position to strike it because I'm not in a position to decide that's in fact what he said or didn't say [when speaking to the PSI investigator]." The PSI does not state Ogden was charged with possession of paraphernalia; it states Ogden *reported* he was charged with possession of paraphernalia.

Second, Ogden challenged a statement in the PSI concerning where he went to high school, requesting a correction on the PSI from Boise High School to Capital High School. The district court responded, "So, again, it's just a report of what he said. I appreciate that that may be inaccurate, I'll take that into consideration."

Third, Ogden also challenged the statement, "[t]he defendant advised he received a probation violation in 2009 for blowing into an interlock while intoxicated. He advised 'I asked my wife for a divorce and relapsed on alcohol and meth,' and noted he relapsed again in 2010 due to 'gang stalking.'" Ogden alleged the probation violation was in 2010, not 2009. The district court

21

responded, "So 2010 should be the more current. . . Again, it's a report but I do take that into consideration."

Ogden challenged two other statements related to drug use. The first was a statement that Ogden "last reported use [of methamphetamine] on September 7, 2018," but Ogden then told the GAIN evaluator he "last used methamphetamine on July 30, 2019." The district court responded: "The problem is they're both based on self-report, based on what the defendant told the PSI investigator on one hand and told the GAIN reporter on another. Sometimes defendants tell them two different things. I can't change what they report that they were told. I don't think it's particularly relevant but I will take it into consideration."

Finally, Ogden challenged the PSI's statement: "The defendant denied any other drug use; however, the GAIN evaluator noted 'Though no criteria were met for any further substance use disorder diagnoses, he admitted to using the following: cannabis; opioids; sedatives, hypnotics, and anxiolytics.'" The district court responded: "They're just quoting the GAIN evaluation, and I can't change the GAIN evaluation. I appreciate the note. Is there anything else that is more than just argument, like you've indicated[?]"

None of Ogden's factual disagreements with the PSI were affirmatively accepted as true by the district court. And though Ogden notes on appeal, and we agree, that it is important for incorrect information to be removed from a PSI so that information is not improperly considered in a future proceeding, the doctrine of *de minimis non curat lex* instructs that "the law does not concern itself with trifles." De minimis non curat lex, BLACK'S LAW DICTIONARY (11th ed. 2019). Whether Ogden graduated from Boise High or Capital, whether he self-reported drug use in September or July, or the contradictions Ogden made in his own statements are exactly that— trifles. The district court did not abuse its discretion in handling each one as it did.

Ogden points to a series of cases to support his argument that this Court has repeatedly found in favor of redlining a PSI to ensure the information is accurate. *See generally State v. Mauro*, 121 Idaho 178, 183, 824 P.2d 109, 114 (1991) (excluding a report in the PSI from the U.S. Attorney's Office that did not explain why the PSI reporter found the report reliable); *State v. Golden*, 167 Idaho 509, 512, 473 P.3d 377, 380 (Ct. App. 2020) (remanding the case to the district court because the PSI did not reflect the changes to the PSI the district court agreed to make); *State v. Molen*, 148 Idaho 950, 961, 231 P.3d 1047, 1058 (Ct. App. 2010) (concluding that the district court abused its discretion in declining to redline a PSI when the report was not clearly attributed

to the defendant); *State v. Rodriguez*, 132 Idaho 261, 264, 971 P.2d 327, 330 (Ct. App. 1998) (hearsay did not make a PSI unreliable when the defendant had the chance to rebut the testimony from the hearsay declarants at trial).

Ogden is correct so far as these cases are concerned, but they do not help him here. The potential corrections the district court considered related to information Ogden disputed. "A court, however, is not required to strike or disregard information in the PSI simply because the defendant disputes the information." *Golden*, 167 Idaho at 511, 473 P.3d at 379. We hold that the district court acted within the bounds of its discretion in denying Ogden's requested changes to the PSI; each were statements Ogden made to the PSI investigator, and none of the alleged errors conflict with Idaho Criminal Rule 32's directives. It was within the district court's discretion to deny Ogden's request to redline the PSI. Ogden does not suggest the district court's decision was outside the outer bounds of its authority or the applicable legal standards. Accordingly, we affirm the district court's decision.

2. *The alleged victim's medical records*

While the district court did not agree to correct or red line the five statements Ogden requested, the district court *did* affirmatively agree to strike the medical records for Ogden's alleged victim in an unrelated case. Ogden maintains those records remained in the PSI sent to the Idaho Department of Corrections. The State agrees this case should be subject to a limited remand for the district court to properly strike the medical records from the PSI. We also agree. *See Golden*, 167 Idaho at 512–13, 473 P.3d at 380–81 ("Because the PSI in the appellate record does not reflect the changes the district court suggested it was making…we remand to the district court to ensure that the court's additions or corrections are reflected on Golden's PSI and that the corrected PSI is the one distributed per I.C.R. 32(h).").

We recently clarified in *State v. Greer* that a district court abuses its discretion when it fails to redline a PSI that it agreed was inaccurate. When the PSI entered into the appellate record does not include the corrections the district court agreed to make, this Court cannot determine if those changes occurred. A defendant should not be required to provide a document that may not exist; if the district court did not correct the PSI, the defendant cannot supplement the record with a corrected PSI. The State likewise agrees a limited remand would be appropriate. Based upon that agreement we conclude that the district court abused its discretion in failing to redline Ogden's corrections to the PSI that the court agreed should be redlined. As we held in *Greer*, a limited

remand is appropriate in these circumstances. *Greer*, __ Idaho __, 524 P.3d 386, 394 (2023). Thus, we conclude that a limited remand is warranted here to ensure that the district court's order striking the victim's medical records from the PSI took place so that those documents no longer appear in the post-sentencing version of the PSI as contemplated by *Greer*, *Golden* and Idaho Criminal Rule 32(e). If those records remain in the PSI, the district court must ensure those records are stricken, and that the revised PSI is provided to IDOC.

## V. CONCLUSION

For these reasons, we affirm the district court's decision preventing Ogden from presenting his response to Sontag at trial, and while we conclude that the court erred in allowing the State to present irrelevant testimony from Wirshing, that error was harmless. We remand this case to district court to ensure that the victim's medical records are stricken from the PSI. The remaining corrections Ogden challenged pertaining to the PSI were not accepted by the district court, and the court acted within its discretion to deny Ogden's redline requests.

JUSTICES BRODY, STEGNER, MOELLER, and ZAHN CONCUR.